IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-00840-FL

| | |
|---|---|
| MARTIN G. BAUM, ) | |
| ) | |
|     Appellant/Creditor, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| DOREEN SUSAN BAUM, ) | |
| ) | |
|     Appellee/Debtor. ) | |
| _____ ) | |
| ) | |
| IN RE: ) | |
|     Doreen Susan Baum, ) | |
| ) | |
|     Debtor. ) | |
|     Case No. 14-03283-5-DMW ) | |
| ) | |

This matter is before the court on appeal by creditor Martin G. Baum ("appellant"), from a final order of the United States Bankruptcy Court dated September 23, 2016, granting judgment in favor of debtor-appellee, Doreen Susan Baum ("appellee"), in an adversary proceeding appellant initiated in appellee's Chapter 7 bankruptcy action. The parties have submitted briefs on appeal, and in this posture the issues raised are ripe for ruling. For the reasons that follow, the court affirms the decision of bankruptcy court regarding the dischargeability of appellee's debt.

## BACKGROUND

Appellee filed a petition for relief under Chapter 7 of the Bankruptcy Code on June 6, 2014. On September 10, 2014, the bankruptcy court entered a Discharge of Debtor, granting appellee discharge pursuant to 7 U.S.C. § 727.

On October 14, 2014, appellant instituted an adversary proceeding ("AP") by filing complaint against appellee. Appellant asserted against appellee two counts of fraud (together "fraud claims"). Appellant also sought declaration by the court that appellee's liability to him is non-dischargable pursuant to 11 U.S.C. § 523(a)(15) ("dischargability claim"). On October 16, 2014, appellant filed a proof of claim in bankruptcy court for the amount of $134,000.00. On November 10, 2014, appellee filed a motion to dismiss the adversary complaint on the basis that it was not filed prior to the dischargeability bar date. Following hearing on the motion, the bankruptcy court entered an order granting appellee's motion to dismiss, but allowing appellant leave to file amended complaint.

On February 2, 2015, appellant filed amended complaint in the AP. Appellee filed an answer to appellant's amended complaint on June 1, 2015. Following a period of discovery, the bankruptcy court held trial on February 11, 2016. On September 23, 2016, the bankruptcy court entered an order and judgment in favor of appellee with respect to appellant's dischargability claim and dismissing appellant's fraud claims without prejudice. This appeal followed.

## STATEMENT OF FACTS

The bankruptcy court provides a full recitation of the facts, which the court summarizes as follows. On or around September 24, 1988, the parties married. (DE 3-1, p. 2). Throughout the course of the marriage, appellant was the predominant income earner of the household and appellee managed the parties' financial affairs. (Id.).

From approximately 2008 through 2010, appellant was president and chief executive officer of the real estate development company Turnberry Development, LLC ("Turnberry"). (Id., at 3). Appellant's income was dependent on the real estate market, which experienced a downturn during

these years.  Because of this, the parties only consistent source of income was a $20,000.00 monthly payment appellant received from Turnberry as repayment for a loan. (Id.).  Appellant stopped receiving this monthly payment at the time the loan was fully repaid sometime in mid-2009.  As a result, the parties experienced significant financial strain. (Id.).

At all relevant times herein, appellant maintained at least two individual retirement accounts (collectively, "IRAs") with First Citizens Bank ("First Citizens"). (Id.).  In early 2009, the combined value of the IRAs was approximately $350,000.00.  As a result of the parties' financial difficulties, appellant would occasionally authorize appellee to withdraw funds from the IRAs. (Id.).

On or about March 5, 2009, appellee completed an IRA distribution form directing First Citizens to transfer $20,000.00 from one of the IRAs to the parties' First Citizens joint checking account.  (Id.).  Appellant signed the distribution form and on March 11, 2009, First Citizens completed the transfer.  (Id., at 4).  On several separate occasions thereafter, appellee submitted altered distribution forms to First Citizens directing it to transfer various amounts from the appellant's IRA accounts.  (Id.).  Appellant did not authorize these distributions. (Id.).

At all relevant times herein, the parties, along with appellant's parents, owned beach property in Emerald Isle, North Carolina (the "rental property").  (Id., at 7).  During the years 2009 and 2010, appellee collected rental income from the rental property, which was used to pay the mortgage on the property.  (Id.).  Sometime in August 2009, appellee received a $3, 380 check from Robert Fuller Fleming, as payment for use of the rental property. (Id.).  The check was made payable to the parties, jointly. After appellee received the payment, she forged appellant's name and deposited the check into the parties' joint checking account.  Appellee then withdrew the funds and deposited them into a new bank account she opened with BB&T (the "BB&T account").  Thereafter, appellee

began depositing other rental checks into the BB&T account. (Id.). Appellant was not an authorized user of the account and was not able to access funds deposited in it. (Id.). As a result of appellee's withdrawals, appellant failed to make mortgage payments on the rental property. (Id., at 8).

Sometime in April 2009, the parties stopped sharing a bedroom, although they continued to live under the same roof. (Id., at 9). The parties legally separated in or about January 2010. (Id.). Thereafter, appellee filed for absolute divorce, which the District Court of Wake County, North Carolina granted on April 8, 2011. (Id.). On April 28, 2014, the court entered a Consent Order for Alimony and Arrears and a Consent Order for Equitable Distribution in connection with the divorce. (Id.).

## DISCUSSION

A.  Standard of Review

This court has jurisdiction pursuant to 28 U.S.C. § 157(c)(1) to review the bankruptcy court's proposed findings of fact and conclusions of law. This court "shall make a de novo review upon the record . . . of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made." Fed. R. Bankr. P. 9033(d); see also Humboldt Express Inc. v. Wise Co. (In re Apex Express Corp.), 190 F.3d 624, 630 ( 4th Cir. 1999) (de novo standard applies to both findings of fact and conclusions of law). This court "may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." Fed. R. Bankr. P. 9033(d).

B.  Analysis

Chapter 7 of the Bankruptcy Code allows a court, in certain circumstances, to discharge an

individual from all debts that arose before the date of the order for relief. See 11 U.S.C. § 727. Section 523(a) enumerates several categories of debts that are excepted from debtor's § 727 discharge. Id. § 523(a). "When considering the applicability of an exception to discharge, [courts] construe the exception narrowly to protect the purpose of providing debtors a fresh start." In re Rountree, 478 F.3d 215, 219 (4th Cir. 2007) (internal quotations omitted). As relevant here, §523(a)(15) provides, that a debtor shall not be discharged from a debt

> (15) not of the kind described in paragraph (5) [dealing with alimony, maintenance and child support] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit;

11 U.S.C. (S) 523(a)(15).

At issue on appeal is whether or not appellee incurred debts to appellant "in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record." "[I]n deciding questions of statutory interpretation, [courts begin] with the text of the statute." Othi v. Holder, 734 F.3d 259, 265 (4th Cir. 2013) (internal citations omitted). "Unless Congress indicates otherwise, [courts are to] give statutory terms their ordinary, contemporary, common meaning." Id. (internal quotations omitted). To determine the plain meaning of a statute, courts "not only look to the language itself, but also the specific context in which that language is used, and the broader context of the statute as a whole." Id. (internal quotations omitted). "It is an axiom of statutory construction that courts are obliged to give effect, if possible, to every word used by the legislature." In re Kitchin Equip. Co. of Va., Inc., 960 F.2d 1242, 1247 (4th Cir. 1992) (internal citations omitted).

As relevant here, the Code does not define the term "in the course of a divorce or

separation," nor does it define the term "in connection with a separation agreement, divorce decree or other order of a court of record." Therefore, the court gives these terms their ordinary meaning, as informed by state law and standard, nonlegal dictionaries.

First, in North Carolina, legal separation "means more than abandonment; it means [a] cessation of cohabitation of husband and wife by mutual agreement." Oliver v. Oliver, 219 N.C. 299, 299 (1941). Under North Carolina law, a couple wishing to obtain a divorce must "live separate and apart for one year." N.C. Gen. Stat. § 50-6. Second, as commonly understood, the term "in the course of" means "[d]uring the specified period." Oxford English Dictionary Online, https://en.oxforddictionaries.com/definition/us/in_the_course_of_%25E2%2580%2594 [https://perma.cc/37JH-A6FV].

Appellant contends that the bankruptcy court erred in concluding that the debts incurred by appellee were not "created by the Domestic Consent Orders," or otherwise incurred "in the course of the [p]arties' separation and divorce proceedings." (DE 12, p. 7). More specifically, appellant argues that § 523(a) is not limited to formal proceedings. Appellant suggests that because the parties were living in separate bedrooms as early as April 2009, the allegedly fraudulent conduct giving rise to the debts occurred "in the course of a divorce or separation."

Relying on In re Kelly, 549 B.R. 275 (Bankr. D.N.M. 2016) and Reynolds v. Reynolds, 546 B.R. 232 (Bankr. M.D. Fl. 2016), appellant urges the court to "liberally construe[] payment of familial obligations rather than to give a debtor a fresh financial start." Reynolds, 546 B.R. at 236–37.[1]

---

[1] In its order, the bankruptcy court considered whether either of the domestic consent orders "created any potential liability of the [appellant] to the [appellee] which is excepted from the [appellee's] discharge under § 523(a)(15). Where every obligation created by the Alimony Consent Order is owed by appellant to appellee, the bankruptcy court concluded that "there are no debts of the [appellee] to the [appellant] reflected in the Alimony Consent

Contrary to appellant's suggestion, the bankruptcy court properly found that the subject debts are dischargable under § 523(a)(15). Although the parties were informally separated at the time appellee incurred her debts, in North Carolina legal separation requires "cessation of cohabitation." Since the parties were still living together at the time appellee incurred her debts to appellant, it cannot be said that the debts arose during the course of the parties' divorce or separation. A plain reading of the statute necessitates this result. The court declines to adopt a more expansive interpretation of § 523(a)(15).

Furthermore, while the Fourth Circuit has not addressed the issue, numerous courts have interpreted § 523(a)(15) to require the creation of new debt in the course of a divorce or separation. See e.g., Jaeger-Jacobs (*In re Jaeger-Jacobs*), 490 B.R. 352 (Bankr. E.D. Wis. 2013); Burton v. Burton (*In re Burton*), 242 B.R. 674, 678 (Bankr. W.D. Mo. 1999). For example, in Jaeger-Jacobs, a couple, in the course of their divorce, entered into several marital settlement agreements, which required the wife to bear responsibility for certain joint credit card debts. Id. at 355. The settlement agreements were incorporated into the parties' divorce judgment. Id. Following the divorce, the wife filed for Chapter 7 bankruptcy. Id. In response, the husband initiated an adversary proceeding to have the credit card debts declared non-dischargable pursuant to § 523(a)(15). Id. at 357. The bankruptcy court concluded the debts were subject to the exception contained in § 523(a)(15), where

---

Order." (DE 3-1, p. 36). The bankruptcy court also concluded that the Equitable Distribution Consent Order did not create any debt obligation. The bankruptcy court reasoned that "because the Equitable Distribution Consent Order does not make any inequitable division of debts between the [p]arties, and the [appellee] did not assume solely any individual obligations of the [appellant] or joint obligations of the [p]arties," the consent orders created no new debt. (DE 3-1, p. 38). The court further concluded that even if appellee did assume obligations, the Anti-Indemnity Clause within the Equitable Distribution Consent Order constitutes a waiver which extinguishes appellant's right to assert his fraud claims. Appellant does not assign specific error to the bankruptcy court's determination that the debts were incurred by debtor in connection with a separation agreement or other court order. To the extent appellant assigns error on this basis, the conclusion is not contrary to law. See e.g., Burton v. Burton (*In re Burton*), 242 B.R. 674, 678 (Bankr. W.D. Mo. 1999) (finding that § 523(a)(15) requires creation of a new debt).

the marital settlement agreements created a new obligation between the spouses. Id.

In the instant matter, the consent orders entered in connection with the parties' divorce did not create any new obligation between the parties. Importantly, the Alimony Consent Order, restricted to resolve all claims for alimony and child support in their entirety. The Equitable Distribution Consent Order likewise did not expressly create a new obligation to be paid from appellant to appellee. This further supports finding that the debts incurred by appellee do not fall under the § 523(a)(15) exception to discharge.

## CONCLUSION

For the foregoing reasons, the court AFFIRMS the order of the bankruptcy court. (DE 3-1). Because the facts and legal arguments are adequately presented in the briefs and record, the court dispenses with the argument requirement under Federal Rule of Bankruptcy Procedure 8019(b), as argument would not aid significantly the decisional process. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 28th day of September, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge